UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:10CV349-J

MELISSA A. KAUFMAN                                                                              PLAINTIFF

VS.

MICHAEL J. ASTRUE,
    Commissioner of Social Security                                                    DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Melissa Kaufman ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be affirmed.

## PROCEDURAL HISTORY

On July 25, 2007, Claimant filed application for supplemental security income. After a hearing, Administrative Law Judge George A. Jacobs ("ALJ") determined that claimant's lumbar spine abnormalities, hypogenesis of corpus callosum, coccydynia, plantar fasciitis, heel spurs, tarsal tunnel syndrome, depression, anxiety, panic attacks, post traumatic stress disorder, personality disorder, bipolar disorder and obesity were severe impairments that prevented her from performing any of her past relevant work. The ALJ further found that she retained the residual functional capacity for jobs existing in significant numbers. This became the final decision of the Defendant on all applications when the Appeals Council denied review on March 13, 2010.

1

STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

ARGUMENTS ON THIS APPEAL

Plaintiff argues that the ALJ erred in failing to accord the proper weight to the opinion of her treating physician, psychiatrist Stephen Taylor. On October 10, 2007, Dr. Taylor opined that Ms. Kaufman had serious limitations in several functional areas. Tr. 314-319. Plaintiff contends that because she continued to treat with Dr. Taylor, the ALJ should have accorded his opinion greater weight than that accorded the opinion of Dr. Gupta, who examined plaintiff on October 7, 2007.

The courts have long held that the treating physician – especially one who has seen the patient over a period of time -- is in a unique position to evaluate the functional impact of an impairment on her or his patient, and the law recognizes the importance of that point of view by according deference to the opinions of treating physicians. In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the court again confirmed the weight ordinarily due the opinion of a treating

physician. Wilson also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. Section 404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also Soc.Sec.Rul. 96-2p.

A treating physician's opinion, if uncontradicted, should be given complete deference. See, e.g., Walker v. Secretary of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir.1992). A treating physician's opinion is entitled to controlling weight if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. S 404.1527(d)(2)(1999). In other words, the opinion of a treating physician need not be given *controlling* weight unless supported by clinical or diagnostic findings. See Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir.1997); Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir.1993); Kirk v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). However, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference," even if that opinion does not qualify for *controlling* weight. Rogers v. Commissioner of Social Security, 486 F.3d 234, 242 (6th Cir. 2007).

The underlying basis for according greater weight to the opinion of a treating physician is the fact that one who has seen a patient over a period of time is in a better position to evaluate complaints, relate incidents to previous events. A question may arise concerning the significance of a patient's attempts to engage in various activities, and the doctor may have noted the difficulty

of persuading the patient to refrain from attempting activity. This is precisely the type of insight that justifies greater reliance on the opinion of a treating physician, even if that physician has not treated the claimant continuously, and it is the type of insight that an expert merely reviewing written records simply cannot have.

In this case, the opinion rendered on October 10, 2007 was *not* that of a treating physician. That was plaintiff's first contact with Dr. Taylor. While she did continue to see Dr. Taylor thereafter, his contact with her was limited to periodic brief visits to renew prescriptions. He did not update or reaffirm his October 10, 2007 impression. Thus, at the time of the October 10 evaluation, Dr. Taylor's position was precisely the same as one-time examining physician Dr. Gupta, who had seen plaintiff three days earlier. Under such circumstances, there is no basis for imposing a legal requirement that Dr. Taylor's statements be given more weight than those of Dr. Gupta. The Court finds no error.

Neither is there a basis for claimant's contention that Global Assessment of Functioning scores demonstrated disability as a matter of law. According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV at 32. The range 41-50 is described as appropriate for "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." The range of 51-60 is described as appropriate for "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic

attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

Even leaving aside for a moment the principle that disability is a legal decision, not a medical decision, it is readily apparent that the GAF, standing alone, is a poor tool for determining ability to engage in substantial gainful employment. One reason is that, "occupational functioning" is but one of three fields considering in assessing the GAF. Another problem with using it as a tool for determining disability is that any system that seeks to compress all psychiatric and psychological considerations into a scale of one to one hundred is necessarily approximate, subjective, and subject to considerable variation in interpretation even among experts who agree with one another about a patient's degree of impairment in any specific area. Finally, it must be noted that a particular GAF range is considered appropriate for several alternative reasons; some of the factors that might result in a low GAF would be largely irrelevant to occupational capacity (for example, suicidal ideation), and it is equally clear that someone with a higher GAF might, in fact, have symptoms that severely interfered with the ability to work (for example, conflicts with co-workers).

The United States Court of Appeals has rejected suggestions that an ALJ commits error by declining to view a GAF score as establishing disability. Pointing out that it had "affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower," the Sixth Circuit recently cautioned that the GAF may have little or no bearing on the claimant's social and occupational functioning. DeBoard v. Commissioner, 211 Fed.Appx. 411, 415 (2006).

Consequently, while the GAF may represent a single piece of information to be considered in a disability inquiry, it cannot substitute for specific information about particular capabilities and

5

characteristics. It necessarily follows that where there is specific information available, vacation of a decision solely on the basis of a GAF number is inappropriate. The Court sees no error in the ALJ's refusal to treat GAF scores as compelling evidence of disability.

Thus, as there is no error of law and substantial evidence supports the decision of the ALJ, this Court must affirm that decision. An order in conformity has this day entered.